All right, thank you. And we'll move on to the next case set for argument, which is Perdomo-Gonzalez v. Garland, Case No. 23-1953. Ms. Kang. Yes, good morning, Your Honors. May it please the Court? I'm Leila Kang of the Northwest Immigrant Rights Project, representing the four petitioners in this case. Are you speaking a little louder? Yes, I'm sorry. Is that better? Okay, great. I represent the four petitioners in this case, David Perdomo-Gonzalez, Nora del Carmen Cardona-Mendoza, and their two children, M.E. and D.E. I'd like to reserve three minutes of my time for rebuttal. This case presents a range of issues, but today I'd like to focus on two critical errors that highlight why the petition should be remanded. The first is the BIA's straightforward mischaracterization of the application submitted by the family members of the lead petitioner, and then the second issue that I'd like to address more substantively is the Board's application of matter of WIC and HOB in this case. To start by touching upon the first one, the BIA was simply mistaken when it found that Ms. Cardona and the two children were seeking only derivative asylum, and in doing so, the BIA denied their applications without any consideration. Can I ask you about that, though? I mean, I think you're right as a technical matter. It's not derivative, but they weren't different in any way. So if they were denying, if the IJ was denying, I mean, there weren't new different claims. They were all, I mean, I just wonder if it's a different use of the term derivative. At the end of the day, if you were going to deny the original claim, there was no way to find a different answer to the different applications, was there? It's a few points in response to that, Your Honor. So the first thing is that the BIA itself didn't actually analyze the substance of the family members' applications to find that they were derivative. And so because this court can only review the grounds invoked by the agency, I don't think that that is an appropriate reason to affirm the BIA's decision here. But even looking to the actual applications themselves, the immigration judge's records show that there is no dispute that each family member presented an independent application. And the problem here specifically is that the immigration judge failed to develop the record to see if the family members did have a legal basis that was different from Mr. Bingham. This is Judge Nelson's question, but in a just slightly different form. Is the evidence different for the claims of the other family members, or do we look at the same evidence? I think we look at the same evidence. I believe you would look at similar evidence, Your Honor. You say similar. In what ways would it be different? I believe that the family members could present different testimony, for example, as to the cognizability of a different particular social group. And the independent family member who didn't get to really testify on her own behalf, Ms. Cardona, she could also present additional evidence that wasn't presented here regarding the other elements. Did she seek to testify? I'm sorry? Was there any attempt by her to testify in front of the IJ? Yes, well, she did testify in front of the IJ, Your Honor. And when she came onto the stand, the immigration judge's first question to her was, have you heard your husband's testimony, and do you have anything to add or correct? And then after that, the immigration judge didn't really follow up with her substantively about her own case. And given the facts of this case and her own case, how would her case have been different? What evidence would she have had that was different? What we have in the record is that the gang members approach her husband on several different occasions, asking him to help to be a lookout. He refuses, refuses, refuses. On the last time, they show guns, and they threaten severe damage, even death, as to the family members. What else might she have said? I don't think there's anything else to be said. Do you have any notion as to that she would have additional evidence beyond that? I believe that she could have presented facts that speak to the element of the protected ground, and specifically of a family-based social group. In terms of the... Isn't the question not, or isn't this tied up with the other problem, that they were never told that they needed to have a particular social group, or they needed to have any... They were not... Were they ever told that they needed a nexus to some protected ground? No, Your Honor, and that is... Even at that level, were they told that much? No, they were not, Your Honor, and if you look... They weren't told specifically that, since they didn't... And one possibility was a particular social group. They weren't told that. That's correct. And they weren't told what it meant. And if they had... And she was differently situated with regard to that question, possibly. That is correct, Your Honor, and that's... She was... There was a reasonable possibility that she was differently situated as to that question, and as Your Honor just pointed out, the immigration judge never advised or never provided any information that the asylum seekers were required to prove their eligibility by establishing connection between their fear of harm to a protected ground. And instead, they... Can I back up? Because, I mean, why do you say that? Because the IJ helped them fashion a protected or particular social group. Now, it ultimately wasn't a basis for relief, but why isn't that enough to sort of walk them through? What did you want the IJ to say? Sure, Your Honor. The IJ could have elicited facts that go to a different particular social group for the family members. Okay, so that goes to your claim that the IJ actually had to do the work for them and find the social group. Where does our case law require that? That does not seem to be a requirement in our case law. So, I believe that this court's case law does support that requirement. And in cases like Jacinto and Agyeman, this court has held that the immigration judge has a duty to develop the record and that this duty includes explaining what an applicant needs to prove and what evidence was relevant and by what means they can establish it. Now, Jacinto has been scaled back significantly in subsequent cases. But even if you take that at face value, that does not support your argument, which is that the IJ had to help them come up with a protected or, excuse me, a particular social group that included family relations. Well, the IJ had a duty to fully develop the record. And even in the board's own... I give you that. But fully develop the record, I mean, what does that mean? That means they have to be given the opportunity to develop the record. But the IJ doesn't have to do the work for them. We've never imposed that upon an IJ. Sure, but here the IJ did limit Ms. Cardona's testimony. So because the immigration judge had to adjudicate each of the family members' educations... How did the IJ limit her testimony? By, well, when the immigration judge starts out by asking her an incredibly limited question, he limits the scope of the testimony, especially when it's the pro se. He said, do you have anything to add to Mr. Cardona's testimony? Correct. And this court held in Lexina, Pangilinan, that simply asking if somebody has something to add or anything to add doesn't actually cure an immigration judge's failure to probe for the facts that are critical. And so in this case... So what facts were critical? The facts that were critical have to do with whether her membership and her family relationship to Mr. Perdomo... See, that's where I've got to just disagree with you, because if we went that route, you would be imposing on every IJ the responsibility to be the advocate and attorney for the immigrant. That cannot be the case law. No one has ever said that. I think what you have, I mean, it seems like you have a more narrow basis for your argument, but it cannot be that the IJ did not ask questions about a particular social group that never was presented to the IJ. Well, so here there could be a simple ruling that the immigration judge didn't really develop the claim as to the family members at all, but... Isn't that more of a legal question? I mean, it does bother me that he never told them that they had to have any nexus to any protected ground or that one of the protected grounds is a particular social group. Or maybe he could have said in one possibility, and there are various possibilities of what could be a particular social group. But ultimately, what more evidence would there be on the family issue? Yes, and I believe that goes to Judge Nelson's questions earlier as well. And those facts are not in the record because they were not elicited, but the immigration judge could have asked, for example, for information that's specific to Ms. Cardona, questions such as who do you believe will harm you? If you were not married to Mr. Perdomo, how likely is it that the gang members would target you and harm you? Have you had any interactions with the gang members other than through the threats that you received through your husband? How would the gang members know? She wasn't denied the opportunity to make any of those statements. I mean, presumably if some of that would have existed, she would have responded to his first question differently and said, oh, no, I do have something to add because the gang members came and saw me the next day. I mean, the idea didn't prevent her from saying that. Sure, but that fact indicated that the immigration judge should have asked her about her own claim and about a potential family-based particular social group. On this record, as Judge Berzon has pointed out, the immigration judge never gave information as to what they needed to establish. So it was impossible for a pro se asylum seeker like Ms. Cardona to know that her relationship to her husband was even relevant. Let me ask you this. Let's assume that she would have proposed social groups and, in fact, on appeal to the BIA, several were, a whole bunch of them, ten of them, I guess. Were any of those cognizable? I mean, I look at those and I say, I don't recognize any of those as particularized social groups that we've previously recognized. Do any of them satisfy the criteria that we have advanced? My understanding is that when she articulated certain other potential social groups with the assistance of counsel before the BIA, that it was to point out that there were other potential groups that the immigration judge should have explored for or probed for rather than to actually conduct the cognizability analysis for each one of those. I've got a different question. As to any of those ten, is there established case law that those constitute particular social groups? I believe that there is, of those, that there are three that pertain to a family-based social group and the family this court has recognized can be a viable particular social group. Now, no particular social group can be categorically viable because it's always an independent case-by-case analysis. Well, I know the case law, at least I think I know the case law, with respect to whether the family is a group, and it can be, but the only cases I'm aware of, it's sort of an extended family, it's not the nuclear family. Do you have a nuclear family that's an example of a family as a recognized group? I do not have that at hand, Your Honor, and I do believe that the BIA should have conducted an analysis that's specific to the facts of this case. And I see I only have two minutes left. I have one more question.  I gather that, although Mr. Perdomo is still technically a petitioner here, you're not making any arguments on his behalf. Well, we do make arguments on his behalf in our briefing, and there were errors that were committed with respect to the BIA's denial of his applications. I think one that we highlighted is the fact that the BIA mistakenly found that he had waived an argument when he hadn't, and that merits a remand, and we did also challenge the other determinations of the BIA. But as to the development of the particular social group, we do believe that the error is primarily with respect to the immigration judge's failure to address any of the family members' applications. Okay. We'll give you time for rebuttal. Thank you. May it please the Court, Timothy Hayes on behalf of the Attorney General. I will jump right into the I.J.'s duty to develop the record. The I.J., well, the I.J. himself, used the poro in adjudicating the claims. It was clear to me in the record that the immigration judge did consider all of the claims. The issue here is three of the four claims were, in effect, derivative, and they may not be derivative in the technical sense. Were derivative? Correct, Your Honor. And when I say derivative, I don't mean it in the technical sense that the other three family members did not file their own asylum applications or their own withholding applications. I mean in the sense that the fact pattern of the other three family members were all derivative of the lead respondent. Well, yes, but the I.J. never told them that they needed a connection to a protected ground. He never told them about a particular social group, and he never told them that a family was possible. I don't know if he should have, but a particular social group. So they had no basis from anything they were told to differentiate themselves. But, in fact, they perhaps could have been differentiated. Well, I don't think this fact pattern, I mean there has to be something from his testimony that would infer that they could have independent claims, and there was nothing. Why not? Because you think that the family as a social group for the wife and children was not a viable claim? It potentially could be. I'm not saying it is or is not. It potentially could be. But just the fact that you have a particular social group doesn't mean you have an objective basis for fear. And the denial here, too, the immigration judge made an explicit denial on nexus. He said he found in his decision. Yeah, but the BIA didn't, so that's really irrelevant. Well, the BIA said it was the non-citizen's burden to show nexus. They only checked on that box, membership in a particular social group. Well, I don't need to repeat all of it. But the other issue with this case is petitioners had some help. If you look through the record, Lutheran Community Services was helping them. They signed the asylum applications as preparer. I don't believe that they were totally clueless as to all of the elements of an asylum claim. Who came up with the particular social group that they were pushing of El Salvadorans who refused to collude with gangs? Did they come up with that or did IJ help? The immigration judge. The immigration judge listened to predominantly Mr. Perdomo's testimony and inferred from his testimony that that was really the only basis. After the fact. Right, correct, Your Honor. It was after the testimony was completed. They needed any particular social group or any nexus at all. Well, right. I mean, I don't think there's any part on the record where the immigration judge is actually conducting a proceeding where they were told these are the five protected grounds for asylum. I agree with that. But I part ways a little bit because the asylum application itself does discuss this when you fill it out. And even if we have a language barrier, again, they had help. Lutheran Community Services were helping them with filling out that asylum application. And the immigration judge actually. Did the asylum application identify any protected grounds? The asylum application has you check. So it goes. This particular asylum. Right. So you don't necessarily. You don't on the asylum application actually. You could if you want. But the actual box does not actually make you write it down. Standard practice is an immigration judge, at least in counsel cases, prior to testimony being taken, they will ask counsel if they haven't put in any briefing, what particular social group are you relying on? So I know when I'm listening to the testimony what I'm looking for. And also, the BIA really did get this wrong in terms of the fact that there were separate applications. It depends on how you look at it. If you want to look at it in a very technical sense, yes. Again, it comes down to the word derivative in footnote two. Well, it's not just that. They specifically said, for example, that they couldn't have a withholding claim, which is wrong. Well, you would need an independent basis. Withholding is not derivative. You would not have a withholding claim on harms that happen to a family member. They have to happen to you. And at AR 200, Mr. Perdomo was asked, did anyone in your family besides you receive threats? No. So there's no. But they were wrong. They were just wrong. Indirectly, they did. Yes, they did. But they were never directly threatened. None of the family members had anyone come up to them. And in my opinion. But why does that? I don't understand why that changes the analysis. I mean, to me, the reason why I thought that it didn't really matter whether. I mean, to Judge Berzon's point, it does seem like there are some misstatements. I guess it depends on interpretation of derivative. But I would concede, yes. So, but to a certain degree, I guess I'm trying to figure out why it matters. Because Perdomo had already testified that the threat had been made not only against him, but against a family. And she heard that. So if she had more to add, she could have added it. Right. I agree with Your Honor. I mean, I was just getting at the it's kind of a subsidiary point. It's a matter of a key point. There are some situations where someone would harm like your wife. Not because they have any animosity against your wife, but they're trying to get you. So they know that you will have emotional or trauma from your wife being harmed. Or that you'll be more inclined to cooperate because it's not just harm to you, but it's harm to your family. Correct. And the withholding provisions, both under ACAT and the Act, they're designed to be very individual and independent. I mean, because they don't even provide family derivative benefits. So most of the time what happens, it's happening to you. The threat is directly to you. Or there's an escalation that's not present in the other application. If you're a third party and you hear about a threat, the threat doesn't have to be made to you. If you hear that a threat – I mean, presumably Perdomo, I think the evidence is there that he went and told his family, hey, we're all under threat here. That's why they left. Right. So why is that any less of a threat to her, to the other family members? Well, I don't think it's any less of a threat, but when you look at the way his asylum application was adjudicated, I think we can all fairly agree that nearly all of the harm was to him. He was directly threatened. If that is not enough to form an objective basis, then – Well, maybe the better way to put it is they weren't differently threatened than he was. Correct. So if his threat doesn't rise to it, there's nothing additional about that. Right. I mean, to the extent I was suggesting that a threat never matters – But that's true as to whether it rises to the level of persecution, but that's not our issue. But it's not true as to the particular social group question because the wife and child might – I don't know if they do – have a separate claim for family, particular social group. So it could rise to the level of a protected ground for them and not for him. I suppose in a scenario it could, but this record doesn't even plausibly support that. Most of the time when you see something like that, again, they're going after the family's lineage. It's usually gang members that are upset the family owns land, and they're going after everyone in the family that's tied to that land or something like that. We have no indication that they're actually interested in the family beyond having Mr. Perdomo and potentially his wife work as lookouts. They're not interested in the family per se. They're interested in the fact that they have the means of leaving the village and they can act as lookouts. It's hard for me to understand what you mean. They're not interested in the family per se. I mean, there is a threat to the male, Mr. Perdomo. Correct. There is then a threat to the family members when he does not cooperate.  And I don't know that we need to have one of these sort of land disputes where it's an extended family. My issue with respect to the social group is why isn't this smaller family a family protected? It could potentially be a family group. Why do you need a larger family? Well, they didn't – to the extent I suggested that size of family is – Those are the cases. They have a larger family. I understand that. Right. But why does not that same rationale extend to a smaller family group, a nuclear family? I mean, in particular cases, a nuclear family could be a protected ground, but the persecutor's motive has to be centrally, in the case of asylum, they have to be targeting them because of that ground, not for other reasons. I think we're getting – What's that mean? You mean because of that ground? I mean, I'm threatening you, and the way I'm threatening you is if you don't do it, I'm going to kill your wife or I'm going to kill your children. So why is that not, quote, because of that ground? Your motive for threatening me goes beyond I want to kill your family in that case. We particularly don't know why you're threatening me. It would be very odd for someone to come up. Different from the land. My motive is the land. Well, here the motive is I want you to spy for me. Then it would be a landowner issue, but I would agree in that case. We're not engaged yet. The motive may be I want your land. The motive may be I want you to be a lookout. There is a motive. And once I've got my motive, I'm threatening family members because I wish to accomplish that objective. So why is a nuclear family different from an extended family when I'm threatening members of the family in order to achieve my objective? It isn't necessarily. I can't directly answer that question because that wasn't even decided here. But it's relevant to the way I'm thinking about it for the moment. I'm trying to figure out if it's worth it to say, you know, there was an inadequate opportunity for these, I'll call them quasi-pro se people, to develop a proposed protective social group. I think you would have to look at the record that was presented to the board because this was raised in the board and the inadequacies they pointed out. You have a burden to suggest that there's evidence that would give rise to a family-based claim, and there isn't any evidence. I don't think on this record there's enough evidence. I've got a family with the evidence we have here in front of us, and I've asked you why does that not qualify as a family-based claim, and you say, well, I'm not so sure. That was your answer. Well, the board would have to reach the decision as to whether this family would qualify on these facts, and I'm not so sure that they would. Well, I'm not so sure either. What do we do with that given that there was no sort of invitation to develop that, and maybe there was enough opportunity, maybe there wasn't? Well, I think on appeal when it was raised in their appellate brief, it could have been further developed. I mean, I think you have to raise how your social group would have tied what you were prevented from presenting before the immigration judge, and they weren't prevented from presenting any testimony before the immigration judge. The immigration judge did his job in this case. He gave them multiple continuances. He asked them open-ended questions. Direct testimony went on for quite a while. But isn't that ultimately what we're trying to decide, is did the IJ have any other obligations, and if so, what were they? It strikes me as a little bit extreme to say that the IJ had to tell them, hey, you might have, look, I've heard this evidence. By the way, you might actually have this new protected class. But maybe the IJ had to tell them something lesser than that of, hey, you do need to come up with a protected class, and you've got to show some nexus to that. I think that the facts have— Do our cases support that? Not that I'm aware of. The only case that tends to go that way is the Quintero case out of the Fourth Circuit. But that case that— What about Jacinto? It remanded because they didn't tell— they didn't develop the question of what the motive was, which is pretty close to that. Well, I'm drawing a blank, so I'm sorry. I can't directly comment to that case. Why can't you? Because I'm not recalling it in my head right now. It's the main case in the Ninth Circuit. I know. I should know. I'm just thinking of the Quintero case that they raised in their brief. It relies on Jacinto. It does. You're right. It does. But in my opinion, it extends it. And it extends it in a way where— well, it doesn't extend that case. But the Fourth Circuit basically said you have to at least try to fashion a group for them. And I think that the immigration judge in this case did based on their testimony. I don't think that the immigration judge has to lay out facts that would give rise to a viable claim and sort of steer their testimony in a certain direction. And unless Your Honors have any further questions. Well, I wanted to go back because, I mean, we're focused on Jacinto or however you say that case. And then it was clarified in Hussain. And I guess that's my question is, did I.J. satisfy effectively Hussain? Because in Hussain, we said Jacinto, which is the high-water mark of the Ninth Circuit's due process, case law stands only for the proposition that an I.J. must inform petitioners that they have a right to testify and must give them an opportunity to do so. Correct. So, I mean, as long as they were given an opportunity to develop their own story, that seems to be enough. Do you agree with that or do you think more is required? The only caveat I would add is to the extent that as they're telling their story, and the story should be in particular with pro se petitioners in an open narrative format, to the extent the story is leading a certain way where the facts would reasonably infer a particular social group, I think it's reasonable to expect some sort of social group analysis. But the facts on the direct testimony have to sort of give way to that. And I don't think. Jacinto said, because you don't remember it, says that it was important for Jacinto to establish that her persecution or her well-founded fear of persecution rested in one of these factors, race, religion, et cetera. However, this was not developed in the proceedings because the immigration judge never explained the requirement to her and never gave her an opportunity to testify fully on her own behalf. She was only permitted to testify through an examination conducted by the immigration judge. So, why isn't that applicable here? I wouldn't say it's inapplicable. But in this case, not only did she have assistance preparing her asylum application, but the immigration judge actually, reading, taking her testimony in the narrative, he made a nexus-based finding that the gang members here were motivated by their interest in continuing criminal activities free from police involvement. And then he said even if a nexus were established to the particular social group that he proposed, the court would alternatively find that this particular social group is not connizable. So he made a nexus finding that it was general criminality. There was no viable PSG on these facts. If the facts suggested a viable PSG, you know, then perhaps it would be different. And I was reading that up. If the facts would be different in our exchange, I asked you, well, is there a PSG here where it's a nuclear family as distinct from an extended family? And you said you weren't sure. Well, to Mr. Perdomo, no. Because we can say Mr. Perdomo was not targeted because of his family. He was the first one targeted. Right. So that gets us back to the question of the other three. Right. The wife and the two children. Right. And then I think, I believe I responded, I can't really answer that because the board hasn't gone there and it may or may not be. And that would be my answer again. Yeah, so we're not sure whether there's a PSG with respect to the family members. But I would submit on these facts, I don't think it's a viable claim. Well, you just, I think you've just said two things. You just said it's not a viable claim and then you've also said you're not sure whether it's a viable claim. Well, I was particularly speaking to the nexus requirement. I mean, there's multiple requirements to an asylum claim. You have to have an objectively reasonable basis, you know, but just on the nexus component. But this wasn't rejected purely on nexus either. The agency made a finding that the government was able and willing to control the gangs they fear, which is an independent basis. So even if all of the nexus. I view that one as questionable, actually. And I think there's a reason why you haven't been emphasizing it up until this point. But that is an alternate basis for the agency's decision. And that basically goes down to, oh, I'm sorry. I apologize, Your Honor. I'm really over time. Okay. Well, we've taken you over, but thank you. So I have a few points in response. The first is that any assistance that the petitioners received with respect to filling out the I-589, there's nothing in the record that shows that Lutheran Community Services did more than just basic transcription and translation. The record shows that a staff member of that organization was appearing as a friend of courts for pro se asylum seekers, and the IJ made it clear that they're not providing any legal representation. And here, the application where the preparer is supposed to identify themselves, it doesn't have an attorney bar number. It doesn't have a signature. There's no evidence to show that they actually received legal advice. But also, that's not the reason the BIA found to say, well, they should have been expected to delineate their own particular social groups. Here, that's not the ground that was invoked. What about the unable or unwilling issue? Yes, Your Honor, we do believe that the BIA erred on that issue and that the record compels a finding that the Salvadoran government was at least unable to control the gang members because the evidence that was provided before the agency and in the human rights report that the BIA took administrative notice of, the record did contain enough evidence to compel the conclusion that the Salvadoran government is unable to control the gangs that continue to operate in El Salvador, that despite law enforcement presence, major gangs still control access to territories, which was demonstrated by this case. Your Honor, supports that? I mean, because these cases come up a lot from El Salvador. Have we held that in other cases, that the El Salvadoran government is unable to control gang violence? Well, in J.R. V. Barr, Your Honor, this court did examine whether the petitioner established that the Salvadoran government was unwilling and unable to control gang members. And in that case, this court held that some official responsiveness to complaints of violence could be relevant, but it doesn't equate to governmental ability and willingness. And in Madrigal v. Holder, this court also held that the board errs when it considers just the willingness of the government and not at the actual ability of the government to do so. But doesn't the fact that, I mean, the whole basis of the threat against Perdomo was that the gangs didn't want him cooperating with the government because the government was actually surveilling them. So doesn't that suggest that the government is taking action? I mean, isn't that the whole basis of the threats against Perdomo? Well, I do believe that statement by the gangs can be read in many different ways. So maybe the immigration judge could take that as circumstantial evidence. But it's also evidence of the fact that despite the police surveillance that may exist, that may or may not exist in Mr. Perdomo's community, the gangs were operating and they were free to threaten people as they come and go from work. And so I don't think that that alone compared to the other evidence in the record that is more compelling. Reviewing it for substantial evidence, right? Well, in this case, I believe there are two issues. I'm just talking about this issue that we're talking about, unwilling or reviewing for substantial evidence. Well, on this issue, I believe that we have argued that the board committed a legal error in examining just the willingness and not the ability. And then the other argument goes to substantial evidence. And we believe we've established both. Okay. Thank you. Thank you both for your arguments in this case. The case is now submitted.
judges: FLETCHER, BERZON, NELSON